IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GORAN MISIC,

    Plaintiff,

v.                                                       Case No. 14-1321-JTM

CAROLYN W. COLVIN,
    Acting Commissioner of Social Security

    Defendant.

MEMORANDUM AND ORDER

Goran Misic applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, on April 14, 2011, stating that he became disabled on July 4, 2010, as the result of neck pain, spondylosis, and carpal tunnel syndrome. The Commissioner of Social Security denied his application upon initial review (Tr. 72-74) and on reconsideration. (Tr. 75-89). Misic then sought review by an Administrative Law Judge (ALJ). In an opinion issued March 5, 2013, ALJ Ross Stubblefield found that Misic was not disabled within the meaning of the Act. (Tr. 7-21). The decision of the Commissioner became final when the Appeals Council declined Misic's request for review on August 19, 2014. (Tr. 1-3).

Misic argues in the present appeal that the ALJ erred in failing to fully consider the June 2, 2009 opinion of Dr. Brent Koprivica (M.D.), and erred in finding that the plaintiff was not fully credible in his subjective description of the severity of his impairments. For the reasons provided herein, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record, and the decision of the Commissioner is affirmed.

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g). The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which prevents the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C.

§ 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

As noted earlier, the plaintiff complains that the ALJ failed to explicitly discuss a medical statement issued by Dr. Koprivica in 2009. The government argues that Dr. Koprivica's opinion was issued nearly a year before the date Misic allegedly became disabled, and was rendered for a different purpose – documenting his workers compensation claim against his employer, and focuses heavily on the unique aspects of work for that particular employer.

As the plaintiff notes, an ALJ must evaluate all of the relevant medical evidence in the case, whenever it was issued. *See Lackey v. Barnhart*, 127 Fed. Appx. 455, 458 (10th Cir. April 5, 2005) ("no authority is cited for the proposition that medical reports prior to the operative onset date are categorically irrelevant, and, indeed, our precedent is to the contrary"); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless

4

relevant to the claimant's medical history and should be considered by the ALJ"). However, "while the record must show the ALJ considered all the evidence, he is not required to discuss every piece." *Bradley v. Colvin*, ___ Fed.Appx. ___, 2016 WL 1019214, *2 (10th Cir. March 15, 2016) (citing *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014)). The ALJ must present a "statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

The ALJ's opinion here fully explains the evidence supporting his conclusion. Dr. Koprivica examined Misic in connection with his workers compensation claim against his employer, Orion Fittings. Koprivica wrote that that Misic was temporarily totally disabled from October 30, 2007 to November 21, 2007, a "period … unusual in terms of its short duration." (Tr. 538). Prospectively, Dr. Koprivica indicated that Misic continued to suffer from partial impairment going forward, singling out the effect of his employment on his carpal tunnel.

Dr. Koprivica stressed "Mr. Misic's constant hand use activities at Orion Fittings, especially the trimming of plastic." These activities, he wrote, "were unique to his employment," presenting a level of "upper extremity hand use" to which "[t]he general public is not exposed." (Tr. 539). Koprivica noted that Misic was again on temporary disability from January 15 to March 30, 2009, and concluded that Misic had a 25 percent right hand impairment and a 20 left hand impairment.  (Tr. 541). Koprivica later submitted a supplemental statement indicating that Misic should also avoid overhead

lifting, vibration, awkward postures, operating heavy equipment, or lifting more than 50 pounds. (Tr. 543-44).

It is true that the ALJ's opinion does not directly mention Dr. Koprivica by name. But, read in context, the opinion indicates that the ALJ considered Dr. Koprivica's statement and other evidence relating to Misic's carpal tunnel syndrome, and explains his non-disability determination.

At the hearing, the plaintiff and his counsel stressed to the ALJ the effect of Misic's spinal surgeries, and pain and loss of motion in his neck and back. (Tr. 40, 42-45). In fact, Misic testified that his carpal tunnel surgeries alleviated his wrist pain. Asked if he had "any problems with your arms or your wrists," Misic responded, "At this point no. They took care of the pain." (Tr. 44). Misic then testified that "[t]he only issue I have is that I have trouble handling small parts now," explaining he tended to drop them. (*Id.*) Later in the hearing, Misic testified, "I don't think I had any [lifting] issues with the carpal tunnel." (Tr. 50).

The ALJ's decision was explicitly rendered "[a]fter a careful consideration of the entire record." (Tr. 12, 14). When "the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (brackets and internal quotation marks omitted)) The ALJ noted that Misic's "history of carpal tunnel syndrome status post release surgery has been taken into consideration by limiting him to occasional overhead reaching and frequent, but not constant, fingering." (Tr. 19). More particularly, the ALJ expressly agreed (Tr. 16) that "[t]he record also reflects a history of carpal tunnel syndrome" – and specifically

6

referenced Exhibits 10F and 20F in the record. Exhibit 10F is a collation of three reports submitted to Barnett Law Firm, including the "the following medical records … Brent Koprivica, M.D.:  06-02-2009, 08-05-2009, 09-20-2009." (Tr. 557).

The Koprivica statement centers on an impairment, carpal tunnel syndrome, which Misic himself testified was effectively resolved by surgery. The only remaining issue, Misic told the ALJ at the hearing, was an inability to handle small objects.  In his RFC assessment, the ALJ ultimately found that Misic should "avoid all exposure to excessive vibration," and any employment which requires constant manipulation of small items, those the size of a paper clip.  (Tr. 14.)

Following the general history of Misic's carpal tunnel syndrome, which included Dr. Koprivica's statements, the ALJ noted the essentially successfully carpal tunnel surgeries, and the fact that Misic's treating surgeon released him to return to work "Full Duty." (Tr. 560). And the ALJ also mentioned the December 3, 2011 consultative physical evaluation of Misic by Dr. Jay Hughey (D.O.), in which Dr. Hughey noted the complaints of carpal tunnel syndrome and its historical treatment. He also reported the results of his own examination of Misic's extremities:

> Jamar apparatus shows 44 pounds of grip strength with the right hand and 38 pounds of grip strength with the left hand. cooperation is maximum. Dexterity is preserved. Tinel and Phalen are negative bilaterally. Clubbing as well as cyanosis are absent. Radial, posterior tibial, and dorsalis pedis arteries are easily palpated bilaterally. There are no varicose veins or edema. There is no limitation of joint movement and all joints are without tenderness, effusion, or redness except for the following [5% reduction in in lumbar flexion and rotation].

(Tr. 729). Dr. Hughey ultimately concluded that Misic's capacity for "[m]anipulating small objects is intact." (Tr. 730).

Similarly, the ALJ also explicitly referenced and gave great weight (Tr. 17). to the findings of state agency medical consultant Dr. Paul Kindling (M.D.). Dr. Kindling reviewed all of the evidence in the case and concluded that Misic did not have any manipulative limitations. (Tr. 85).

In sum, the ALJ considered all of the evidence in the record, acknowledged Dr. Koprivica's statement by reference to exhibit number, and fully explained the reasons for concluding that Misic was not disabled by discussing in detail the evidence showing that Misic's carpal tunnel and other impairments were effectively resolved.

Next, Misic argues that the ALJ erred in determining that his subjective description of his impairments was less than fully credible. A claimant's subjective complaints of impairment, such as claims of disabling pain, are evaluated for credibility under a three-step analysis that asks:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).  The ALJ "must consider the entire case record, including the objective medical evidence" to determine whether plaintiff's subjective claims are credible.  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).  The ALJ should consider "a claimant's persistent attempts to find relief for her pain and her willingness

to try any prescribed treatment prescribed," regularity of contact with her doctor, possible psychological disorders that may combine with physical problems, daily activities, and daily dosage and effectiveness of medications. *Keyes-Zachary*, 695 F.3d at 1167.

The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies evidence relied on in the credibility analysis. *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 WL 374186, *4) (July 2, 1996).

Recognizing that "some claimants exaggerate symptoms for the purposes of obtaining government benefits," (*Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1260 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)), an ALJ's credibility determinations are generally treated as binding on review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. *Wilson*, 602 F.3d at 1144; *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). The court cannot displace the ALJ's choice between two fairly conflicting views even though the court may have justifiably made a different choice. *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007). However, notwithstanding the deference generally given to an ALJ's credibility

determination, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998)).

Here, the ALJ predicated his credibility assessment on multiple grounds. First, the ALJ noted a disconnect between Misic's description of his symptoms, and both his hearing testimony and the ALJ's personal observations of the plaintiff. At the hearing, Misic

> testified he has difficulty moving his head side to side and up and down. However, I noted at the hearing the claimant appeared to move his neck freely. Furthermore, the claimant testified he has difficulty gripping small objects with his right hand, making a fist with his left hand, and holding his arms overhead. However, he admitted his hand pain resolved after he underwent carpal tunnel release surgery. He also admitted his neck pain improved after he received epidural steroid injections.

(Tr. 15).

Second, in addition to the hearing testimony and his direct observation of the plaintiff, the ALJ also discussed in detail the general treatment record. (Tr. 17-18). As the ALJ noted, that record generally indicates successful treatment of Misic's back and neck pain. Following epidural treatments in 2011, Misic told Dr. Periapatna Anath (M.D.) that he experienced "nearly 90% improvement in his symptoms." (Tr. 715). Medical records also showed successful treatment of neck pain by medication. As noted earlier, the ALJ also gave great weight to the opinion of Dr. Kindling that Misic was generally able to work, except for some limitations as to lifting, climbing, and vibration. The ALJ also gave great weight to the consultative evaluation and assessment by Joi

McNeley-Phelps (Ph.D.), who concluded that Misic "is capable of performing a variety of job-related tasks and has no significant cognitive impairment." (Tr. 18).

Third, the ALJ generally noted the extent of Misic's activities of daily living.

> The claimant's activities of daily living are inconsistent with his allegation of disability. According to his functional reports, he provides for his own personal care, prepares meals, makes the bed, uses a computer, watches television, reads, walks on a treadmill, washes dishes, takes care of his pet bird, does the laundry, drives, shops for groceries, and manages his own money. Similarly, during a consultative evaluation in January 2012, he reported he lives alone, shops for groceries, prepares meals, cleans, does laundry, watches television, reads, and uses the computer some. Furthermore, in a third party functional report, the claimant's mother, Dragica Jovic, reported the claimant takes care of his pet bird, drives, shops, and manages his own money. The claimant's wide range of activities of daily living leads me to find his allegedly disabling impairments are not as significant as alleged.

(Tr. 18 (record citations omitted)).

The ALJ then noted the combined effect of the successful management of Misic's impairments contrasted with his failure to follow recommended treatments. The medical record, as the ALJ noted, established that these treatments, while "routine, infrequent, and conservative," nevertheless demonstrated that Misic's "condition improves significantly with treatment and medication compliance." (Tr. 18). The compliance caveat was added based on the hearing admission that Misic stopped taking minimal anti-anxiety medication after only three days.

Finally, the ALJ noted the use of leading questions by plaintiff's counsel during the evidentiary hearing, and plaintiff's limited work experience. The ALJ noted that in 1997, 1998, 2006, 2007, 2009 and 2010, Misic had little or nothing in the way of earnings. (Tr. 19). Misic had no earnings in the 18 months before the date of onset of disability.

11

Moreover, "in the claimant's disability report, he stated he stopped working because he was laid off from his job and not due to his impairments." (*Id*.)

The plaintiff argues that the ALJ's credibility assessment was erroneous because it incorrectly describes his treatment as "conservative" when in fact the evidence shows that he was required to undergo surgery. (Dkt. 14, at 5). He contends that the ALJ erred in relying on his activities of daily living, by stressing that the "'sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.'" *Krauser v. Astrue*, 638 F.3d 1324, 1332-1333 (10th Cir. 2011) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.1993). And he argues that the ALJ erred in considering his apparent ability to move freely during the hearing by citing *Teter v. Heckler*, 775 F.2d 1104 (10th Cir. 1985), but in that case the court did not hold that an ALJ must ignore manifest discrepancies between a claimant's putative condition and his actual appearance at an evidentiary hearing. Rather, the court simply observed that, given "the *uncontroverted* record evidence corroborat[ing] Teter's pain as genuine, albeit partly psychological, the ALJ may not reject Teter's assertions on the basis of demeanor *alone*." *Id*. at 1106 (emphasis added).

This case is different from *Teter*. The evidence supporting the plaintiff's subjective complaints is not uncontroverted. As the ALJ noted, the great weight of the evidence indicates that Misic's impairments have been managed by conservative treatment. Moreover, the ALJ did not rely on the plaintiff's demeanor alone, but as part of a thorough examination of the plaintiff's credibility.

Similarly, the ALJ accurately noted that Misic is able to drive daily, walk on a treadmill, makes his own meals, washes dishes, does the laundry, and shops for groceries once a week. (Tr. 183-186). The ALJ did not err in noting, as one element of the credibility assessment, that this level of activities was inconsistent with the severe level of impairment claimed by the plaintiff.

The court finds no error in the ALJ's credibility assessment. The ALJ did not ignore the plaintiff's surgeries; he accurately noted the bilateral carpal tunnel release surgeries – and the surgeon's prompt release of the plaintiff to "full duty work." (Tr. 16). By Misic's own testimony, the surgeries effectively resolved the carpal tunnel impairment. The ALJ's subsequent description of Misic's treatment as "routine, infrequent, and conservative" is a generally accurate assessment of plaintiff's post-surgical treatment.

IT IS THEREFORE ORDERED this 31st day of March, 2016, that the judgment of the Commissioner is affirmed.

___s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE